**BARCO et al. v. PENN MUT. LIFE INS. CO. OF PHILADELPHIA.**

District Court, S. D. Florida.

Feb. 14, 1941.

Batchelor & Dyer, of Miami, Fla., for plaintiffs.

Shutts, Bowen, Simmons, Prevatt & Julian, of Miami, Fla., for defendant.

HOLLAND, District Judge.

This is a suit for reinstatement of a certain life policy issued by defendant to Samuel J. Barco, now deceased, and for the recovery by Blanche W. Barco, as executrix of the estate of Samuel J. Barco, deceased, and Walter L. Harris, as trustee of said estate, on monthly disability benefits thereunder from April 25, 1938, to October 10, 1939; and for recovery by the plaintiffs Betty Barco and Jack Barco, a minor, the children of said decedent, of the death benefits of said policy. The gist of plaintiffs' cause of action, as alleged, is that the decedent was totally and permanently disabled on April 25, 1938, and continuously thereafter until the date of his death on October 10, 1939, but that because of his Christian Science faith he did not believe his disability to be total and permanent until the latter part of July, 1939; that he failed to pay a premium on the policy due on June 24, 1938 (because of his financial inability so to do), and that he, the said decedent, thereupon within the time allowed by said policy, surrendered it to the defendant company for the cash surrender value thereof in the amount of $1.74, together with the return to him of his note held by the defendant company evidencing a loan against said policy in the amount of $10,473.76.

The defendant admits the issuance of said policy, and admits the payment of the premiums prior to June 24, 1938; admits the surrender of the policy on the cash surrender value basis, and admits the demand for reinstatement of the policy and its refusal so to do. The defendant denies that the said Barco was totally and permanently disabled, and denies the other material allegations of the complaint and alleges that no proof was furnished the defendant as required by the terms of the policy; that the decedent was guilty of laches; that there was a default in the payment of a premium and the policy was surrendered for its cash value, and any liability thereunder thereby terminated.

Findings of Fact.

The court, after having considered the issues raised by the pleadings, and heard the evidence introduced by the parties to this suit, and the final argument of counsel, makes the following findings of fact:

1. On March 24, 1925, the defendant issued its policy of insurance to Samuel J. Barco, deceased, providing for the payment of death benefits in the sum of $100,000.

2. On January 8, 1937, said policy of insurance by mutual agreement between the defendant and the insured was cancelled, and in lieu thereof there was issued a policy providing for the payment of death benefits in the sum of $50,000, and for the payment of disability benefits in the sum of $250 per month.

3. The said policy of insurance, No. 1165350, provided that the promise of the insured to pay the death and disability benefits therein provided for, was made in consideration of the payment in advance to the company at its Home Office of the sum of $141.35 at the date of said policy, and the further payment of a quarter-annual premium of $395.50 on or before the 24th day of March, June, September and December in every year until the death of the insured; and provided further that the policy years for payment of premiums should be computed from March 24, 1925.

4. On October 27, 1937, pursuant to the written request of the insured, dated October 23, 1937, a change in beneficiary was made in said policy, whereby James Jackson Barco, son of the insured, and Betty Sue Barco, daughter of the insured, were designated as beneficiaries thereunder.

5. The premiums on said policy of insurance were duly paid for the period to and including June 23, 1938. The install-

ment of quarterly premium of $395.50 which became due on the 24th day of June, 1938, was never paid.

6. Subsequent to the lapse of said policy for the nonpayment of the premium installment which became due on June 24, 1938, the insured, within time prescribed by the policy, exercised his option under said policy to surrender the same in exchange for the cash surrender value thereof.

7. On August 17, 1938, in compliance with the request of insured to have paid to him the cash surrender value of said policy, the defendant company mailed to the insured a check in the sum of $1.74, in full payment of the cash surrender value of said policy, after deducting therefrom the indebtedness owing by the insured to the defendant company.

8. The insured died October 10, 1939.

9. From April 25, 1938, to the date of his death, the said Samuel J. Barco, the insured in the policy sued on, was incapacitated to the extent of being wholly and permanently unable to do substantially all of the material acts that are usually required to be performed in the profession of the practice of law, in which the insured was engaged at said time, in substantially the customary or usual manner.

10. The said Samuel J. Barco, the insured, made a conscientious effort and attempt to engage in his profession until the middle of July, 1939, and because of Christian Science faith he did not believe his disability to be total and permanent until such time; he failed to pay a premium on the policy sued on, the last due date of which was July 25, 1938, because of his financial inability, and, under a provision of the policy permitting him so to do, he surrendered the same, and delivered it to the company in exchange for his note evidencing a loan which the company had made him on the policy, and the company's check for $1.74, in full consideration for his surrender of the policy, as has been heretofore stated herein.

11. On August 2, 1939, the insured's physical condition had become so serious that he was no longer able to perform any duties whatsoever in connection with his profession, and had been forced theretofore, on or about July 15, 1939, to give up his office. The evidence further shows that by reason of the insured's then desperate condition, his Christian Science faith kept him no longer from informing, and he did so inform, the defendant that his disability had been total and permanent from April 25, 1938, and that he claimed therefore that he was entitled to have the policy reinstated for the reason that neither he nor the defendant knew of his total and permanent disability on the final due date of the premium payment, towit, July 25, 1938; and on said date, towit, August 2, 1939, the insured requested reinstatement of his policy, but such request was promptly denied by the defendant company.

### Discussion.

I shall now discuss and interpret the terms of the policy with reference to disability benefits. The provisions of the policy as to disability benefits are under ten separate subdivisions. The first division is made up of two paragraphs in which "Total and Permanent Disability" is defined. The second division deals with monthly income. The third division deals with "Waiver of Premium." The fourth division embraces the general subject matter of "When Benefits Become Effective," and comprises two separate paragraphs. The fifth division provides for "No Deduction for Benefits Granted." The sixth division deals with the subject matter of "Participation." The seventh division deals with the subject matter of "Increasing Values." The eighth division deals with "Recognized Disability." The ninth division deals with the subject matter of "Recovery from Disability." The tenth division deals with "Termination of Disability Benefits."

█ From a careful study of division one, I hold that the "due proof" used in the definition of permanent disability is not a condition precedent. The definition of total disability is clear. This total disability is deemed to be permanent if it has been continuous for not less than three consecutive months immediately preceding due proof. The date of commencement of the three months period prior to the receipt of due proof is not necessarily the date of the commencement of total and permanent disability under the policy. As a means of defining what is permanent disability, it is definitely provided that such total disability must have been continuous for not less than the period of three consecutive months immediately preceding the receipt of such proof.

█ The next division to be considered in this discussion is the third division, deal-

ing with the "Waiver of Premiums." Under the construction of the provisions of the policy defining total and permanent disability, and taking this third division alone and by itself, the plaintiffs should recover in this case. But while contracts of insurance prepared by the insurer, and where there is doubt as to the meaning of their provisions, will be construed most favorably to the insured, and while narrow and unreasonable interpretations in the clauses of an insurance policy are not favored, yet, due consideration must be given to the cardinal principle that, as far as consistently can be done, all provisions in a written contract are entitled to their due significance. In construing this third division, therefore, other provisions of the policy should and must be considered.

I next come to the consideration of the fourth division dealing with the subject matter of "When Benefits Become Effective." Under this division, notice to the company at some time is necessary as signifying to the insurer that the insured claims total and permanent disability. The giving of some notice to the insurer is necessary, as a basis from which to make a calculation as for defining or determining a date on which, under the policy, the disability benefits are to begin. In this sense it may be stated that due proof is a condition precedent. It is clear that it is not absolutely necessary to give this due proof notice within a six-months period after the commencement of actual total and permanent disability of the insured. It is clearly provided when the benefits shall become effective, if due proof of such disability is received by the company at its home office within six months from said date of commencement. At this point, I may add by way of repetition that the term "Date of Commencement" is the actual date of commencement of the total and permanent disability. The policy further provides that if this due proof is not given within six months from the commencement, then the disability benefits shall become effective as of a date six months prior to the receipt of such proof. It is clear, therefore, up to this point, that there is no arbitrary date fixed beyond which the due proof notice may not be given. However, there is a clear provision following to this effect: "In either event that on such effective date no subsequent premium was then in default." When I was considering this case on the motion to dismiss, I rather leaned to a construction of this provision more favorable to the plaintiffs' contention. Upon more mature consideration, however, I find in construing this policy in this case that the date when the benefits would become effective would be six months prior to August 2, 1939, and that on February 2, 1939, there was not only a premium in default if the policy could be considered contemplating the becoming due of a premium, but as a matter of fact the policy had been surrendered by the insured and cancelled. It is quite true that Mr. Barco was laboring under an erroneous impression at the time of the surrender as to his condition, but that cannot be said to have been a mutual mistake in law. Mr. Barco's misconception of his condition, with an adjustment of a cancellation under the fixed terms of the policy, cannot be charged to the company so as to create the basis for relief on the ground of mutual mistake of fact.

If undue prominence is given to the provisions of the policy in division number 4, and that is read by itself, or interpreted in the sense that all other provisions must be made to subordinate themselves to this as a basic or controlling clause, then the insured could not be said to be "in default" if the premium has been theretofore waived, or if the premium should be considered as having been waived because the total and permanent disability had actually commenced prior thereto. This construction, however, would do violence to the cardinal rule that all provisions of a contract must be given their due meaning, if that can be done in harmonizing all the provisions of a written contract, I, therefore, am of the opinion that this term "in default" means just what it says, and that if the insured was in default in not having paid a premium on a date six months prior to August 2, 1939, that there could be no effective commencement date for the disability benefits to accrue to the insured.

Another clause to be considered in this connection is division ten, dealing with "Termination of Disability Benefits." Subdivision No. 1, towit, "Upon Default in the Payment of any Premium" must be given a meaning if at all possible. That provision with reference to "termination" could have no meaning in a case where the disability had actually become effective, because as long as the total and permanent

disability continued, the premium was waived. But this provision would have meaning if applied to a situation such as we have here, towit, that even though the insured did become totally and permanently disabled, much time elapsed until notice to the company was given. While the effective date of commencement would relate back to six months prior to such notice, yet all provisions of the policy with reference to the right to disability would have terminated if in the meantime there was a default in the payment of any premium.

The insured, Samuel J. Barco, now deceased, was an outstanding member of this court and bar, and held in high esteem by his professional associates, and as an acquaintance and friend he had my admiration and respect. This estimate of the character of Mr. Barco characterized the approach of both parties litigant in the presentation of this case, both on the law, and in dealing with the facts.

I find from the evidence that his failure to have notified the company of his total and permanent disability prior to the date of August 2, 1939, was because of his financial inability to keep up the premiums on the policy. This record shows that he was making a brave and conscientious fight to hold on to life and his practice, but that while this record shows the splendid character, and valiant effort on his part, the rights of the parties must be determined by the terms of the contract, and his conscientious belief that he was not totally and permanently disabled should not work against a fair and just interpretation of the language of the policy, as I have attempted to make in this case.

### Conclusions of Law.

As a conclusion of law, under the facts found, and the discussion herein made, I find:

That neither of the plaintiffs is entitled to recover in this suit.

A decree should be presented in accordance with these findings and conclusions. The issue has been decided on a construction of the policy, which was fairly presented on the motion to dismiss, and it would appear that stenographic costs of developing the facts should not be visited upon the plaintiffs. However, I will hear counsel on the matter of costs of taking testimony when the decree is presented for signing.